1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JOHN R. VANCE, JR., State Bar No. 51744
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5864
    Fax:  (415) 703-1234
8   Email:  John.Vance@doj.ca.gov
   Attorneys for Respondent

9

10                    IN THE UNITED STATES DISTRICT COURT

11                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13

14  **JOSEPH GRICE,**                         C 07-2490 PJH (PR)

15                              Petitioner,

16            **v.**

17  **JOHN MARSHALL, Warden,**

18                              Respondent.

19

20

21            **Continuation of Exhibits A - C**

22

23     **(In support of Respondent's Motion to Dismiss
              Petition as Unexhausted)**

24

25                        **EXHIBIT C**

26

27

28

Exhibit C                                   *Joseph Grice v. John Marshall, Warden*
                                                        C 07-2490 PJH (PR)

# EXHIBIT C

## Review Petition

*Vance*

No. 1 Crim. A106172

## IN THE SUPREME COURT

## OF THE STATE OF CALIFORNIA

---

PEOPLE OF THE STATE OF )
CALIFORNIA, )
                        )
      Plaintiff and Respondent, )
                        )
vs. )
                        )
JOSEPH GRICE, )
                        )
      Defendant and Appellant. )

SUPREME COURT

NO: _____ DOCKETED
SAN FRANCISCO

JAN 17 2006

By _____ J. EMELO _____
No. 2004DA0972

---

## APPELLANT'S PETITION FOR REVIEW

---

After Decision in the Court of Appeal
First Appellate District, Division Five
Appeal from the Superior Court of San Francisco County
Honorable Suzanne Bolanos, Judge

---

KYLE GEE  (SBN 065895)
2626 Harrison Street
Oakland, CA  94612
(510) 839-9230

Attorney for Appellant
JOSEPH GRICE

Under Appointment
By the Court of Appeal
Under the First District
Appellate Program's
Unassisted Case System

# TOPICAL INDEX

TABLE OF AUTHORITIES CITED . . . . . . . . . . . . . . . . . . . . . . .  v

APPELLANT'S PETITION FOR REVIEW

      BY THE SUPREME COURT . . . . . . . . . . . . . . . . . . . . .  1

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . .  2

      A.     Issues Relating to "Imperfect Self-Defense,"
            Aggravated Mayhem, and Simple Mayhem. . . . . . . . .  2

      B.     Other Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

REASONS REVIEW SHOULD BE GRANTED . . . . . . . . . . . . . .  3

      A.     Issues Relating to "Imperfect Self-Defense,"
            Aggravated Mayhem, and Simple Mayhem. . . . . . . . .  3

      B.     Other Issues:  Sufficiency of the Evidence and
            Limitations on Impeachment. . . . . . . . . . . . . . . . . .  6

BRIEF IN SUPPORT OF PETITION FOR REVIEW . . . . . . . . .  7

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . .  7

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

I     THE TRIAL COURT ERRED IN FAILING TO IN-
      STRUCT *SUA SPONTE* ON THE *FLANNEL* DOCTRINE
      OF "IMPERFECT SELF-DEFENSE" AS IT APPLIED TO
      THE CHARGED OFFENSE OF AGGRAVATED MAY-
      HEM, WHICH REQUIRES PROOF OF "SPECIFIC IN-
      TENT" TO DISABLE PERMANENTLY, AND IN FAIL-
      ING TO INSTRUCT ON "IMPERFECT SELF-DEFENSE"
      AS IT APPLIED TO THE LESSER OFFENSE OF SIM-
      PLE MAYHEM. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

      A.    The Statutes Defining Mayhem and Aggravat-
            ed Mayhem. . . . . . . . . . . . . . . . . . . . . . . . . . .   9

      B.    *Wells* and *Flannel*. . . . . . . . . . . . . . . . . . . . . . . .   10

      C.    *McKelvey, Sekona,* and *Hayes*. . . . . . . . . . . . . . . . . .   12

      D.    *McKelvey*'s Analysis Is The More Persuasive
            as to Simple Mayhem. . . . . . . . . . . . . . . . . . . . . .   16

      E.    Application of the Case Law to Aggravated
            Mayhem. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

      F.    The Duty to Instruct *Sua Sponte* on the Facts
            of This Case. . . . . . . . . . . . . . . . . . . . . . . . . . .   19

      G.    The Failure to Instruct Violated the United
            States Constitution. . . . . . . . . . . . . . . . . . . . . . .   20

II      IF THIS COURT ACCEPTS MR. GRICE'S ARGUMENT
        THAT "IMPERFECT SELF-DEFENSE" APPLIES TO
        MAYHEM, BUT FINDS WAIVER OR NO *SUA SPONTE*
        DUTY TO INSTRUCT, MR. GRICE SUBMITS ALTER-
        NATIVELY THAT HE RECEIVED INEFFECTIVE AS-
        SISTANCE OF COUNSEL. ........................ 22

III     THERE WAS INSUFFICIENT EVIDENCE TO ESTAB-
        LISH MR. GRICE'S GUILT OF AN OFFENSE GREAT-
        ER THAN SECTION 203 MAYHEM. ................ 23

        A.    Introduction to the Argument. .................. 23

        B.    The Legal Framework, Generally. ............... 23

        C.    The Legal Framework in Reference to Aggra-
              vated Mayhem. ............................. 24

        D.    Application of Those Principles in This Case. ....... 27

IV      THE TRIAL COURT'S SEVERAL RULINGS LIMITING
        THE DEFENSE'S IMPEACHMENT OF MARIE CAS-
        TEEL VIOLATED NOT ONLY CALIFORNIA LAW BUT
        THE SIXTH AND FOURTEENTH AMENDMENTS. ..... 29

        A.    Overview of the Issue. ...................... 29

        B.    Impeachment with Criminal Conduct Involving
              Moral Turpitude. ........................... 29

C.    Impeachment with Respect to Mr. Grice's
      Custody Status. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

D.    The Issue Under the United States Constitu-
      tion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## TABLE OF AUTHORITIES CITED

### FEDERAL CASES

*Bennett* v. *Scroggy* (6th Cir. 1986) 793 F.2d 772                    21

*Burks* v. *United States* (1978) 437 U.S. 1                          27

*Crane* v. *Kentucky* (1986) 476 U.S. 683                             36

*Davis* v. *Alaska* (1974) 415 U.S. 308                               37

*Delaware* v. *Van Arsdall* (1986) 475 U.S. 673                       36

*Greene* v. *Massey* (1978) 437 U.S. 19                               27

*Jackson* v. *Virginia* (1969) 443 U.S. 307                          23

*Keeble* v. *United States* (1973) 412 U.S. 205                       21

*Mathews* v. *United States* (1988) 485 U.S. 58                       21

*Richmond* v. *Embry* (10th Cir. 1997) 122 F.3d 866                   21

*Stevenson* v. *United States* (1896) 162 U.S. 313                    21

*Strickland* v. *Washington* (1984) 466 U.S. 668                      22

*United States* v. *Escobar de Bright*
   (9th Cir. 1984) 742 F.2d 1196                                     21

*United States* v. *Hicks* (4th Cir. 1984) 748 F.2d 854              21

*United States* v. *Unruh* (9th Cir. 1987) 855 F.2d 1363             21

*Washington* v. *Texas* (1967) 388 U.S. 14                           36

*Whipple* v. *Duckworth* (7th Cir. 1992) 957 F.2d 418                21

## CALIFORNIA CASES

*In re Christian S.* (1994) 7 Cal.4th 768                                       15

*In re Johnny G.* (1979) 25 Cal.3d 543                                          28

*In re Williams* (1969) 1 Cal.3d 168                                            22

*People* v. *Bolin* (1988) 18 Cal.4th 297                                       10

*People* v. *Buss* (1980) 102 Cal.App.3d 781                                    31

*People* v. *Campbell* (1994) 23 Cal.App.4th 1488                                5

*People* v. *Campbell* (1987) 193 Cal.App.3d 1653                               27

*People* v. *Castro* (1985) 38 Cal.3d at 301                                    31

*People* v. *Ceja* (1994) 26 Cal.App.4th 78                                     20

*People* v. *Coad* (1986) 181 Cal.App.3d 1094                                   13

*People* v. *Conley* (1966) 64 Cal.2d 310                                       12

*People* v. *Derden* (1978) 82 Cal.App.3d 543                                   36

*People* v. *Ferrell* (1990) 218 Cal.App.3d 828                      10, 24, 25, 26, 27

*People* v. *Flannel* (1979) 25 Cal.3d 668                                seriatim

*People* v. *Fosselman* (1983) 33 Cal.3d 572                                    22

*People* v. *Garcia* (1970) 5 Cal.App.3d 15                                      9

*People* v. *Hayes* (2004) 120 Cal.App.4th 796                            seriatim

*People* v. *Hunt* (1985) 169 Cal.App.3d 668                                    31

*People* v. *Johnson* (1980) 26 Cal.3d 557                                      23

*People* v. *Lang* (1989) 49 Cal.3d 991                                         31

*People* v. *Lee* (1990) 220 Cal.App.3d 320                  24, 25, 26, 27

*People* v. *Marshall* (1996) 13 Cal.4th 799                36

*People* v. *McCary* (1985) 166 Cal.App.3d 1               22

*People* v. *McKelvey* (1987) 194 Cal.App.3d 694           seriatim

*People* v. *Morris* (1988) 46 Cal.3d 1                     24

*People* v. *Northrop* (1982) 132 Cal.App.3d 1027          36

*People* v. *Oates* (2004) 121 Cal.App.4th 1414            10, 25, 26, 27

*People* v. *Pierce* (1979) 24 Cal.3d 199                   28

*People* v. *Pitts* (1990) 223 Cal.App.3d 1547             9

*People* v. *Pope* (1979) 23 Cal.3d 412                     10, 22

*People* v. *Redmond* (1969) 71 Cal.2d 745                 24

*People* v. *Rodriguez* (1992) 5 Cal.App.4th 1398          31

*People* v. *Rosales* (1989) 153 Cal.App.3d 353            22

*People* v. *Sekona* (1994) 27 Cal.App.4th 443             seriatim

*People* v. *Taylor* (1980) 112 Cal.App.3d 348             36

*People* v. *Wells* (1949) 33 Cal.2d 330                   4, 10, 11

*People* v. *Wright* (1892) 93 Cal. 564                    9, 13, 15

*People* v. *Zataray* (1985) 173 Cal.App.3d 390            31

# FEDERAL CONSTITUTIONAL PROVISIONS

Fifth Amendment      2, 20, 27

Sixth Amendment      seriatim

Fourteenth Amendment      seriatim

# CALIFORNIA STATUTES

Evidence Code section 350      31

Evidence Code section 351      36

Evidence Code section 352      31, 36

Health and Safety Code section 11377      30

Penal Code section 7      4

Penal Code section 203      seriatim

Penal Code section 205      seriatim

Penal Code section 242      30

Penal Code section 273.5      30

Penal Code section 485      30

Vehicle Code section 10851      30, 31

# OTHER AUTHORITIES CITED

Perkins & Boyce, *Criminal Law (3d ed.)*      18

Witkin, *California Evidence (4th ed)*      36

IN THE SUPREME COURT

OF THE

STATE OF CALIFORNIA

---

PEOPLE OF THE STATE OF )
CALIFORNIA, )
 )
    Plaintiff and )
      Respondent, )
 )
vs. )
 )
JOSEPH GRICE, )
 )
    Defendant and )
      Appellant. )

## APPELLANT'S PETITION FOR REVIEW

## BY THE SUPREME COURT

TO: The Honorable RONALD M. GEORGE, Chief Justice, and to the Honorable Associate Justices of the Supreme Court:

    Appellant JOSEPH GRICE petitions this Court for review of the unpublished opinion of the First District Court of Appeal, Division Five, filed on December 16, 2000, a copy of which is appended.

    It is respectfully submitted that review should be granted to settle significant issues of law and to ensure uniformity of decision, as well as to exhaust Mr. Grice's state remedies under current federal and state law.

1

## ISSUES PRESENTED FOR REVIEW

A.    <u>Issues Relating to "Imperfect Self-Defense," Aggravated Mayhem, and Simple Mayhem</u>.

    1.   Does the *Flannel* doctrine of "imperfect self-defense" apply to aggravated mayhem, which requires proof of "specific intent" to disable permanently?

    2.   Does the *Flannel* doctrine of "imperfect self-defense" apply to simple mayhem?

    3.   If the answer to either question is in the affirmative, did it violate the due process, compulsory process, and trial-by-jury clauses of the Fifth, Sixth, and Fourteenth Amendments not to have instructed on the defense?

    4.   Did Mr. Grice receive ineffective assistance of counsel, when counsel failed to request "imperfect self-defense" instructions?

B.    <u>Other Issues</u>.

    1.   Was there sufficient evidence to establish Mr. Grice's guilt of aggravated mayhem, which requires proof of "specific intent" to disable permanently?

    2.   Did the trial court's rulings limiting the defense's impeachment of a key witness violate both California law and the Sixth and Fourteenth Amendments?

2

## REASONS REVIEW SHOULD BE GRANTED

A.    Issues Relating to "Imperfect Self-Defense," Aggravated Mayhem, and Simple Mayhem.

This case illustrates an anomaly in criminal law. The Attorney General accepts that "imperfect self-defense" may operate as a mitigating factor in reference to malice-murder, while consistently arguing that "imperfect self-defense" has no role to play as a mitigating factor as to aggravated mayhem, simple mayhem, or other offenses with "malice" elements.

If the Attorney General's position is correct, this means that one may intentionally kill a person in "the honest but unreasonable belief in the right to defend," and be subject only to punishment under section 193, subdivision (a), for a determinate term of three, six, or eleven years. Yet the same defendant, charged by a clever prosecutor, would be subject to a life term under section 205, for the reason that one cannot kill a person, with an intent to kill, without simultaneously disabling that person permanently, with an intent permanently to disable.

In other words, every express malice-murder also involves a violation of section 205, for the reason that death and permanent disability are indistinguishable in this context. Yet as the Attorney General would have it, "imperfect self-defense" could mitigate express malice-murder to voluntary manslaughter -- with a determinate sentence -- while "imperfect self-defense" could not mitigate aggravated mayhem to felony assault, leaving the defendant to serve an indeterminate life sentence. Thus would the State potentially condemn a defendant who intentionally killed in "imperfect self-defense" to die in prison, by also charging a count under section 205.

3

Why should "imperfect self-defense" mitigate conduct done with intent to kill, but with an "honest but unreasonable belief in the right to defend," while not mitigating conduct done with intent to disable permanently, but with an "honest but unreasonable belief in the right to defend"? There is no persuasive answer to this question.

The noteworthy cases start with *People* v. *Wells* (1949) 33 Cal.2d 330 ("*Wells*"), which effectively recognized the concept of "imperfect self defense" as a mitigating defense to "assault with malice by a life prisoner." Next, of course, is *People* v. *Flannel* (1979) 25 Cal.3d 668 ["*Flannel*"], which recognized "imperfect self defense" as a mitigating defense to malice-murder. The cases continue with *People* v. *Hayes* (2004) 120 Cal.App.4th 796 ["*Hayes*"], *People* v. *Sekona* (1994) 27 Cal.App.4th 443 ["*Sekona*"], and *People* v. *McKelvey* (1987) 194 Cal.App.3d 694 ["*McKelvey*"], all of which consider "imperfect self-defense" in reference to section 203 mayhem, with Justice Kline's opinion in *McKelvey* deeming "imperfect self-defense" to apply to simple mayhem, and with *Hayes* and *Sekona* adopting a contrary view.

Mr. Grice submits that the reasoning of *Hayes* and *Sekona* -- even if correct -- has no application to aggravated mayhem, which has a "specific intent" element. Whatever the logical support for distinguishing section 203 "malice" from section 187 "malice aforethought," there is no logical basis on which to distinguish "intent to disable permanently" from "intent to kill."

Mr. Grice submits further that Presiding Justice Kline's reasoning in *McKelvey* is the more persuasive as to mayhem, generally. In Mr. Grice's view, *Hayes* and *Sekona* overlooked the significant fact that Penal Code section 7 "malice" -- which "import[s] a wish to vex, annoy, or

4

injure another person, or an intent to do a wrongful act" -- has the legal connotation of acting "'with wanton and wilful (or "reckless") disregard of the plain dangers of harm, *without justification, mitigation or excuse.'* [Citation.]" *People* v. *Campbell* (1994) 23 Cal.App.4th 1488, 1493; emphasis added. As *Campbell* continues: "Such a state of mind betokens that 'general readiness to do evil' which constitutes moral turpitude. [See *People* v. *Castro* [(1985)] 38 Cal.3d [301,] at 314.)" In sum, one who has acted in "imperfect self-defense" has acted with neither "moral turpitude" nor "malice."

In Mr. Grice's further view, *Hayes* and *Sekona* overemphasized the purported distinction between "malice" as used in section 203 and "malice aforethought" -- particularly "express malice aforethought" -- as used in section 187. Neither *Hayes* nor *Sekona* recognized that modern California law effectively treats "malice aforethought" -- "express" or "implied" -- not so much as a separate "element," but as intent to kill (express malice), or the mental state of conscious disregard for human life (implied malice), *unaccompanied by* a mitigating factor such as "imperfect self-defense" or "heat of passion on adequate provocation." Where express or implied malice aforethought is "negated" by a mitigating factor, this "negation" does not eliminate the intent or mental state, but merely alters the legal implication of that intent or mental state. Imperfect self-defense as easily and logically "negates" section 7 "malice," even though one has acted with an "intent to vex, annoy or injure ...." In other words, the distinction drawn in *Hayes* and *Sekona* between "malice" and "malice aforethought" is a "distinction without a [proverbial] difference."

Finally, Mr. Grice submits: (i) it violated various provisions of the United States Constitution not to have instructed on the defense; and

5

(ii) his counsel's failure to cite *McKelvey* and request "imperfect self defense" instructions constituted ineffective assistance of counsel. Mr. Grice asks that review be granted on this set of issues.

B.    <u>Other Issues: Sufficiency of the Evidence and Limitations on Impeachment</u>.

Mr. Grice also asks this Court to grant review on these two issues. He submits that there was no sufficient evidence to establish Mr. Grice's guilt of aggravated mayhem, which requires proof of "specific intent" to disable permanently, and that the trial court's rulings, limiting impeachment of a key witness, violated California law, as well as the Sixth and Fourteenth Amendments?

6

## BRIEF IN SUPPORT OF PETITION FOR REVIEW

### STATEMENT OF THE CASE

Mr. Grice was convicted by a jury of aggravated mayhem and arson (two counts), in violation of Penal Code sections 205 and 451, subdivisions (a) and (b).[1]  Mr. Grice is serving a State Prison sentence of "straight life."

Mr. Grice was charged with attempted murder with great bodily injury, arson with great bodily injury, arson of a structure, and aggravated mayhem with great bodily injury.  CT 23.[2]  Jury trial commenced on November 21, 2003.  CT 141.  On December 18, 2003, Mr. Grice was found not guilty of attempted murder and attempted voluntary manslaughter, but he was convicted on the other counts.  CT 410, 416.

Mr. Grice was sentenced on February 11, 2004.  CT 434, 438. Notice of Appeal was timely filed March 30, 2004.  CT 439.

---

[1]  All code references are to the Penal Code, unless otherwise noted.

[2]  Clerk's Transcript.

7

## STATEMENT OF FACTS

For the purposes of this Petition, Mr. Grice refers the Court to the factual summary at pages 2 through 6 of the Slip opinion. If a more detailed factual summary is desired, it appears at pages 3 through 14 of the Opening Brief.

In short, Ali Ward, a small-time methamphetamine dealer in San Francisco, was severely burned after gasoline was thrown on him, and the gasoline ignited. The factual issues at trial did not concern who had thrown the gasoline -- Mr. Grice admitted to police to having done so. The factual issues concerned how the gasoline had ignited, what Mr. Ward had been doing at the time the gasoline was thrown, and what Mr. Grice had believed at the time he threw the gasoline.

I

THE TRIAL COURT ERRED IN FAILING TO INSTRUCT
*SUA SPONTE* ON THE *FLANNEL* DOCTRINE
OF "IMPERFECT SELF-DEFENSE"
AS IT APPLIED TO THE CHARGED OFFENSE
OF AGGRAVATED MAYHEM, WHICH REQUIRES
PROOF OF "SPECIFIC INTENT" TO DISABLE
PERMANENTLY, AND IN FAILING TO INSTRUCT
ON "IMPERFECT SELF-DEFENSE" AS IT APPLIED
TO THE LESSER OFFENSE OF SIMPLE MAYHEM.

A.    The Statutes Defining Mayhem and Aggravated Mayhem.

Penal Code section 203 -- discussed in *Hayes, Sekona*, and *McKel-vey* -- defines the crime of mayhem, as follows:

> Every person who *unlawfully and maliciously* de-prives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem.

Emphasis added.

Mayhem is said to be a "general intent" crime. *See People* v. *Wright* (1892) 93 Cal. 564, 566-567; *People* v. *Pitts* (1990) 223 Cal.App.3d 1547, 1557-1558; and *People* v. *Garcia* (1970) 5 Cal.App.3d 15, 18.

However, Mr. Grice was convicted of "aggravated mayhem," under section 205. That statute reads, in part:

> A person is guilty of aggravated mayhem when he or she *unlawfully,* under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, *intentionally* causes permanent disability or disfigurement of another human being or deprives a human

9

being of a limb, organ, or member of his or her body.  For
purposes of this section, it is not necessary to prove an
intent to kill.

Emphasis added.

Unlike "mayhem," "aggravated mayhem" has a "specific intent"
element, to wit:  to cause "permanent disability or disfigurement," or to
deprive of a "limb, organ or member." *See, People* v. *Bolin* (1988) 18
Cal.4th 297 331; *People* v. *Oates, supra,* 121 Cal.App.4th at 1421; and
*People* v. *Ferrell* (1990) 218 Cal.App.3d 828, 832-833.  Moreover, the
punishment for section 205 "aggravated mayhem" is straight life, which
far exceeds the punishment for section 203 mayhem (two, three, or four
years [Pen. Code § 204]).

B.      *Wells* and *Flannel*.

The claim of error in *Flannel* was that the trial court had erred in
failing to instruct *sua sponte* that an actual but unreasonable belief in the
right to defend negates malice and reduces the offense from murder to
manslaughter.  This Court agreed that the underlying legal principle was
sound (23 Cal.3d at 674-680), but it disagreed that there was -- prior to
the decision date of *Flannel* -- a *sua sponte* duty so to instruct (*id.*, at
680-683).

This Court in *Flannel* began by discussing the reasoning and
holding of *People* v. *Wells* (1949) 33 Cal.2d 330.  *Flannel, supra,* 25
Cal.3d at 675.  In *Wells*, the defendant had been charged with violation
of section 4500, which then provided that a person serving "a life sen-
tence ..., who, *with malice aforethought,* commits an assault ... by any
means of force likely to produce great bodily injury, is punishable with

10

death." *Wells, supra,* at 334; emphasis added.  Among the allegations of
error were that the trial court had erred in excluding "evidence of physi-
cians ... from which it could be inferred that, because ... suffering from
an abnormal physical or mental condition ..., defendant acted, not with
'malice aforethought,' but ... under fear for his personal safety, and in the
honest belief that he was defending himself against attack ...." *Id.,* at
344.  In finding error in the exclusion of the defense evidence, the Court
held in *Wells*:

> If he acted only under the influence of fear of bodily harm,
> in the belief, honest though unreasonable, that he was
> defending himself from such harm by the use of a neces-
> sary amount of force, then defendant, although he would
> not be guiltless of crime, would not have committed that
> particular aggravated offense with which he is charged, for
> the essential element of "malice aforethought" would be
> lacking.

*Id.,* at 345.

*Wells,* of course, involved a claim of an "incapacitating physical or
mental condition."  However, the Court later clarified in *Flannel*:

> .... [I]t is of no moment that Wells, unlike defendant in the
> instant case, may have had a special "condition" which
> increased the possibility of genuine fear.  We focused, in
> *Wells,* on "the critical question as to whether defendant's
> overt act was done with 'malice aforethought'...."

> *Flannel, supra,* 25 Cal.3d at
> 678-679.

In extending the *Wells* theory into the realm of murder, the Court
reasoned in *Flannel,* as follows:

11

The nature of malice is central here for "[m]urder is the unlawful killing of a human being ... with malice aforethought" (Pen. Code, § 187); "[m]anslaughter is the unlawful killing ...., without malice." (Pen. Code, § 192.) In [*People* v.] *Conley* [(1966) 64 Cal.2d 310] we examined the meaning of that mental state. We observed that a person who carefully weighs a course of action, and chooses to kill after considering reasons for and against, is normally capable of comprehending his societal duty to act within the law. "If, *despite such awareness,* he does an act that is likely to cause serious injury or death to another, he exhibits that wanton disregard for human life or antisocial motivation that constitutes malice aforethought." (Italics added.) (*Id.*, p. 322.)

Given this understanding of malice aforethought, we cannot accept the People's claim that an honest belief, if unreasonably held, can be consistent with malice. No matter how the mistaken assessment is made, an individual cannot genuinely perceive the need to repel imminent peril or bodily injury and simultaneously be aware that society expects conformity to a different standard. Where the awareness of society's disapproval begins, an honest belief ends. It is the honest belief of imminent peril that negates malice in a case of complete self-defense; the reasonableness of the belief simply goes to the justification for the killing.

> *Id.*, at 679; footnote omitted.

C.    *McKelvey, Sekona, and Hayes.*

Writing for the majority in *People* v. *McKelvey, supra,* 194 Cal.App.3d 694, Presiding Justice Kline [Division Two of the First District] acknowledged that "[m]ayhem, unlike murder, is a general intent crime. [Citations.]" *Id.*, at 702. However, that did not resolve the issue:

Nevertheless, the inclusion of the word "maliciously" in the definition of mayhem clearly requires proof of something

12

more than that the act was done intentionally, wilfully or knowingly. (1 Witkin, Cal. Crimes (1963) § 60, pp. 64-65.) According to Perkins's widely accepted definition, "malice in the legal sense imports (1) the absence of all elements of justification, excuse or recognized mitigation, and (2) the presence of either (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, or (b) the wanton and wilful doing of an act with awareness of a plain and strong likelihood that such harm may result." (Perkins & Boyce, Criminal Law, [Criminal Law (3d ed. 1982)], p. 860; see also *People* v. *Coad* (1986) 181 Cal.App.3d 1094, at pp. 1114, 1117 [226 Cal.Rptr. 386] (conc. & dis. opn. of Kline, P. J.).)

> *McKelvey, supra,* 194
> Cal.App.3d at 702.

*McKelvey's* central premise was as follows:

> Although the "malice" required for the offense of mayhem differs from the "malice aforethought" with which *Flannel* was concerned, it is equally true in both cases that the requisite state of mind is inconsistent with a genuine belief in the need for self-defense. One who truly believes there is a need for self-defense cannot be said to act with intent to "vex, injure or annoy" and may be found guilty of no more than an assault or battery.

> *Id.*; footnote omitted.

*McKelvey* found strong support for its position in the following language from *People* v. *Wright* (1892) 93 Cal. 564, 566-567, in which this Court had concluded that mayhem had no specific intent element: ".... [T]he law will presume ... that [the act] was done unlawfully and maliciously ... unless the evidence tends to show to the contrary ...." See,

13

*McKelvey, supra,* 194 Cal.App.3d at 703. *McKelvey* accordingly con-
cluded, in reference to future cases:

> In summary, *a trial court should instruct sua sponte
> that an honest but unreasonable belief rule in the need for
> self-defense negates the malice required for a conviction of
> mayhem in cases where there is more than minimal and
> insubstantial evidence of self-defense;* the defendant is
> relying upon such a defense or the defense is not inconsis-
> tent with the defendant's theory of the case; there is evi-
> dence to support a conviction of lesser included offenses;
> and the jury is instructed on such offenses.

> *Id.,* at 704; emphasis added.

The matter reposed in this posture until *Sekona, supra,* 22
Cal.App.4th 443, decided by Division Five of the Second District.
*Sekona* noted, first, that neither a statute nor a case from this Court had
applied the *Flannel* doctrine in the context of mayhem. *Id.,* at 450.
*Sekona* noted, second, that the Court in *Flannel* had not held specifically
that imperfect self-defense applied to all offenses which had a "malice"
element. *Id.,* at 451. *Sekona* noted, third, that there was authority to the
effect that section 7 "malice" and section 187 "malice aforethought" are
different concepts. *Id.,* at 453. *Sekona* noted, finally, that "California's
definition of the crime of mayhem has never included a malice afore-
thought requirement, nor have the various statutory formulations inferen-
tially or directly suggested that an actual but unreasonable belief in the
need of self-defense mitigates the offense." *Ibid.*

In the course of explicating this latter point, *Sekona* noted that the
1850 and 1856 definitions of mayhem included only "unlawfully," with

14

the term "maliciously" not appearing in the statute until 1872. *Id.*, at
454-455. *Sekona* also cited *People v. Wright, supra*, 93 Cal. at 566-567
-- as well as other cases -- for the following proposition: ".... California
courts have consistently refused to impose any specific intent, premedita-
tion, deliberation, or malice aforethought element on mayhem; rather, all
that is necessary is malice and a general criminal intent. [Citations.]"
*Sekona, supra*, 27 Cal.App.4th at 457. Accordingly:

> Unlike the situation in *Flannel* where the imperfect self-
> defense rule was grounded in part on "both well-developed
> common law and in the statutory requirement of malice"
> aforethought (*In re Christian S.* [(1994)] 7 Cal.4th [768,] at
> p. 777), mayhem involves a different requisite mental state
> and has no statutory history recognizing a malice afore-
> thought element or the availability of the *Flannel* defense.
>
> *Sekona, supra*, 27 Cal.App.4th
> at 457.

Finally among the relevant Court of Appeal cases is *People v.
Hayes, supra*, 120 Cal.App.4th 796, from the Sixth District. *Hayes*
disagreed with *McKelvey* and largely agreed with *Sekona*:

> We do not agree that a belief in the necessity for
> self-defense can negate an "intent to vex, injure or annoy."
> Such an intent lacks the crucial characteristic of "malice
> aforethought" said in *Flannel* to justify the defense, i.e.,
> awareness that one's conduct does not conform to the
> expectations of society.
>
> *Hayes, supra*, 120 Cal.App.4th
> at 802.

*Hayes* reasoned, as follows:

15

.... [M]alice aforethought reflects or embodies a realization by the actor that his or her conduct *violates social expectations*. It is this realization that cannot be reconciled with an actor's belief that he or she is acting in self-defense, because society approves the reasonable use of force to that end.

This rationale cannot be extended to the more general concept of "malice" as defined in section 7 and incorporated in the statutory definition of mayhem. That definition connotes no element of knowing violation of social norms. It requires only intent to vex, injure, or annoy. A belief that one is acting in self-defense, whether reasonable or unreasonable, has no tendency to negate the element of malice. Indeed, the intent to vex, injure, or annoy may be present when one acts in *reasonable* self-defense. Such a circumstance affords a defense not because it negates the element of malice but because it *excuses or justifies* the conduct in question despite the intent to injure.

> *Id.*, at 803; emphasis in original; footnote omitted.

D.     *McKelvey*'s Analysis Is The More Persuasive as to Simple Mayhem.

Mr. Grice believes *Sekona* and *Hayes* misperceived the current status of "malice aforethought" as an element of murder. If one acts with intent to kill, or with conscious disregard for life, one acts with "malice aforethought," unless the act is also done in "the heat of passion on adequate provocation," or in "an honest but unreasonable belief in the right to defend." If no mitigating factor is present, "malice aforethought" is proven, completely without analysis by the trier-of-fact of "careful weighing" or "considering reasons for and against ...." "Malice aforethought" and "malice" in that sense are quite similar.

16

*Hayes* and *Sekona* perceive a "distinction" between "malice aforethought" and "malice," which is purported to create a "difference" which precludes "imperfect self-defense" as a mitigating factor to section 203 mayhem. Mr. Grice will concede there is a "distinction" in the abstract, but he fails to see why it should make a "difference."

"Malice aforethought" involves either an "intent to kill" (express malice) or "conscious disregard for human life" (implied malice), *unaccompanied by* a mitigating factor such as "imperfect self-defense." When one acts in imperfect self-defense and with "intent to kill" or "conscious disregard for life," "intent to kill" or "conscious disregard for life" is not "negated" in the sense of eliminated by "negated" in the sense of mitigated. Mr. Grice can find no rationale in logic or in law why an act done with the intent to "vex, injure or annoy" (section 7 "malice") should not also be mitigated, if done in the "honest but unreasonable" belief in the right to defend.

Moreover, this Court observed in *Flannel* that "[i]t is the honest belief of imminent peril that negates malice in the case of complete self-defense" (*Flannel, supra*, 25 Cal.3d at 679), and the Court held in *Flannel* that an "honest but unreasonable belief" would similarly negate malice in the case of imperfect self-defense. *Ibid.* Thus can "intent to kill" and/or "conscious disregard for human life" exist in the absence of "malice aforethought," where one holds an "honest belief" -- reasonable or unreasonable -- in the right to defend against imminent peril.

*Hayes* reasoned that an "intent to vex, injure, or annoy" can exist even though one is acting in either "perfect" or "imperfect" self-defense. *Hayes, supra*, 120 Cal.App.4th at 803. This is a proposition with which Mr. Grice does not disagree, because the proposition is as true with a

17

non-deadly assault in the "mayhem" context as it is with a deadly assault in the homicide context.

Yet *Hayes's* concludes from this that neither "perfect" or "imperfect" self-defense can negate section 7 "malice," and it is this conclusion which is flawed. As Professor Witkin explains: "The element of malice in most criminal statutes is satisfied by the intentional doing of an act *without* justification or excuse or *mitigating circumstances* [citations]." 1 Witkin & Epstein, *California Criminal Law (3d ed.)*, "Elements," § 11, p. 213; emphasis added. Professor Perkins reasons that "'malice in the legal sense imports ... the absence of all elements of justification, excuse or recognized mitigation' ...." *Id.*, at 214, quoting Perkins & Boyce, *Criminal Law (3d ed.)*, p. 860. "Imperfect self-defense" is such a mitigating circumstance, as *McKelvey* has recognized.

Mr. Grice will belabor the issue no further. He urges this Court to grant review and to adopt the rationale of *McKelvey*.

E.    Application of the Case Law to Aggravated Mayhem.

The more critical question from Mr. Grice's perspective -- in view of the life term section 205 mandates -- relates to the crime of "aggravated mayhem," which has a "specific intent" element. The question in this context is substantially different, because we are no longer abstractly comparing "malice" in reference to mayhem, with "malice aforethought" in reference to murder. We are now comparing "specific intent to disfigure or disable permanently" in reference to aggravated mayhem, with "specific intent to kill" in reference to express malice murder.

Once this is recognized, there is no longer a basis on which to drive a logical wedge between the "specific intent" in one situation -- to kill -- and the "specific intent" in the other -- permanently to disable,

18

particularly where the former "necessarily includes" the latter.  The logical and legal impetus to apply "imperfect self-defense" in the latter context is as strong as in the former.

*Sekona*, in particular, placed great logical store on the fact that "California courts have consistently refused to impose any specific intent .... element on mayhem; rather, all that is necessary is malice and a general intent crime."  *Sekona, supra*, 27 Cal.App.4th at 457.  *Sekona* reasoned from this observation to the conclusion that "imperfect self-defense" does not apply to mayhem.

This logical underpinning of *Sekona* has no role in the analysis of aggravated mayhem.  For this reason -- as well as the others stated above -- Mr. Grice's jury should have heard "imperfect self-defense" in reference to the section 205 charge.

F.    The Duty to Instruct *Sua Sponte* on the Facts of This Case.

The issue next becomes whether Mr. Grice's trial court had a *sua sponte* duty to instruct on "imperfect self-defense."  In Mr. Grice's case, the answer to that question turns on two factors.

The first factor involves the holding of *McKelvey* itself.  Although there may have been no *sua sponte* duty to instruct on "imperfect self-defense" in relation to murder prior to *Flannel*, publication of the *Flannel* opinion changed the rule.  Similarly, there may have been no *sua sponte* duty to instruct on "imperfect self-defense" in relation to mayhem prior to *McKelvey, McKelvey* held that "a trial court should instruct sua sponte that an honest but unreasonable belief rule in the need for self-defense negates the malice required for a conviction of mayhem in cases where there is more than minimal and insubstantial evidence of self-defense ...."  *McKelvey, supra*, 194 Cal.App.3d at 704.

19

The second factor giving rise to a duty to instruct *sua sponte* relates to the focus of Mr. Grice's defense and the existence of substantial evidence to support the instruction. In that regard, the defense was clear from the very beginning of trial: the argument would be that Mr. Grice had been defending himself. See, RT [12/3/03] 14.[3]

When the trial court instructed the jury, it included "imperfect self defense" as a factor which could negate express malice in reference to attempted murder, in which case the offense would be attempted voluntary manslaughter. RT 472-473. Subsequently, the court instructed on section 203 mayhem as a lesser-included offense of aggravated mayhem (RT 475-477), and it instructed on self-defense generally. RT 478-480. However, the trial court never gave an instruction relating "imperfect self defense" to the crime of "aggravated mayhem."

*McKelvey* directs that "imperfect self-defense" instructions be given *sua sponte* where there is substantial evidence to support them. As the trial court found, there was substantial evidence to support instructions both on self-defense and "imperfect self-defense." Indeed, the latter is, in effect, a "lesser defense" of the former ["... a trial court must also instruct on 'imperfect self-defense' whenever it determines a 'perfect self-defense' instruction is appropriate" (*People* v. *Ceja* (1994) 26 Cal.App.4th 78, 88-89 [Johnson, J., concurring])].

G.    The Failure to Instruct Violated the United States Constitution.

The due process, compulsory process, and trial-by-jury clauses of the Fifth, Sixth, and Fourteenth Amendments mandate that "as a general

---

[3] Reporter's Transcript of hearings on motion *in limine*, held on December 3, 2003.

proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews* v. *United States* (1988) 485 U.S. 58, 63, citing *Stevenson* v. *United States* (1896) 162 U.S. 313 [refusal of voluntary manslaughter instruction in a murder case, where self-defense was the primary defense, constituted reversible error]; *United States* v. *Hicks* (4th Cir. 1984) 748 F.2d 854, 857-858 [the rights to trial by jury and due process were abridged by the failure to give an instruction on the defense theory of the case]; and *Richmond* v. *Embry* (10th Cir. 1997) 122 F.3d 866, 871 [the right to present a defense arises under both the Sixth and Fourteenth Amendments].[4] *See, also, Keeble* v. *United States* (1973) 412 U.S. 205, 213; *United States* v. *Unruh* (9th Cir. 1987) 855 F.2d 1363, 1372; *Bennett* v. *Scroggy* (6th Cir. 1986) 793 F.2d 772, 777-779; and *United States* v. *Escobar de Bright* (9th Cir. 1984) 742 F.2d 1196, 1201-1202.[5] For these reasons, it was federal constitutional error to have failed to instruct on "imperfect self-defense" in relation to section 205 and section 203 mayhem.

---

[4] "A defendant's right to submit a defense for which he has an evidentiary foundation is fundamental to a fair trial ...." *Whipple* v. *Duckworth* (7th Cir. 1992) 957 F.2d 418, 423 [overruled on other grounds in *Eaglin* v. *Welborn* (7th Cir. 1995) 57 F.3d 496].

[5] The failure to instruct on the defense theory infringes Sixth and Fourteenth Amendment guarantees because it prevents the jury from considering defense evidence and making findings of fact necessary to establish guilt. *See United States* v. *Escobar de Bright, supra*, 742 F.2d at 1198; and *Whipple* v. *Duckworth* (7th Cir. 1995) 57 F.3d 496, 423.

21

II

IF THIS COURT ACCEPTS MR. GRICE'S ARGUMENT
THAT "IMPERFECT SELF-DEFENSE" APPLIES TO MAYHEM,
BUT FINDS WAIVER OR NO *SUA SPONTE* DUTY TO INSTRUCT,
MR. GRICE SUBMITS ALTERNATIVELY THAT HE RECEIVED
INEFFECTIVE ASSISTANCE OF COUNSEL.

The matter is straightforward. We know that Mr. Grice faced a
charge of premeditated attempted murder which carried a life sentence,
*and* a charge of aggravated mayhem which carried a life term. We also
know that *Flannel* and *McKelvey* were "on the books" when the case was
tried. We know further that the defense intended to rely on both "per-
fect" and "imperfect" self-defense. We know in addition that the trial
court had found substantial evidence justifying instruction on both "per-
fect" and "imperfect" self-defense. Finally, we know that the Office of
the Attorney General will argue waiver, invited error, and/or "no *sua
sponte* duty," whenever and wherever a defendant claims there was error
on the part of the trial court in an omission to instruct *sua sponte*.

Given this "knowledge," the question becomes whether competent
counsel would have requested an "imperfect self-defense" instruction as
to Count 4. The answer to that question is assuredly yes. *See People v.
Pope* (1979) 23 Cal.3d 412, 424-425 ["the Sixth Amendment and Article
I, § 15 require counsel's 'diligence and active participation in the full and
effective preparation of his client's case.' [Citation.]"]. *See, also,
Strickland v. Washington* (1984) 466 U.S. 668, *People v. Fosselman*
(1983) 33 Cal.3d 572, *In re Williams* (1969) 1 Cal.3d 168, *People v.
McCary* (1985) 166 Cal.App.3d 1, and *People v. Rosales* (1989) 153
Cal.App.3d 353.

·

22

III

THERE WAS INSUFFICIENT EVIDENCE
TO ESTABLISH MR. GRICE'S GUILT OF AN OFFENSE
GREATER THAN SECTION 203 MAYHEM.

A.    Introduction to the Argument.

Mr. Grice's jury found that he had not acted with the specific intent to kill, and for this reason he was acquitted of both attempted murder and attempted voluntary manslaughter. However, the jury found that he had harbored a specific intent to disable or disfigure, and on this basis he was found guilty of aggravated mayhem. Because the evidence established no more than an "indiscriminate attack," and not a "controlled, directed, and limited" assault, Mr. Grice submits there was insufficient evidence to sustain the latter verdict.

Mr. Grice submits that the conviction of violation of section 205 should be reversed and reduced to violation of section 203.[6] The case should be remanded for resentencing.

B.    The Legal Framework, Generally.

In *Jackson* v. *Virginia* (1969) 443 U.S. 307, the United States Supreme Court "announced a new, constitutionally mandated rule for review of the sufficiency of the evidence supporting a state criminal conviction challenged in a federal habeas corpus proceeding." *People* v. *Johnson* (1980) 26 Cal.3d 557, 576. This Court in *Johnson* demonstrated that the California standard complied with *Jackson*.

The evidence must do more than raise a suspicion of guilt.

---

[6]/ Mr. Grice made a section 1118.1 motion during trial. That motion was denied. RT 401-402.

23

> Evidence which merely raises a strong suspicion of the
> defendant's guilt is not sufficient to support a conviction.
> Suspicion is not evidence; it merely raises a possibility and
> this is not a sufficient basis for an inference of fact.

> *People* v. *Redmond* (1969) 71
> Cal.2d 745, 755.

Finally, "speculation" is no substitute for proof.

> A reasonable inference, however, "may not be based on
> suspicion alone, or on *imagination, speculation, supposi-*
> *tion, surmise, conjecture, or guess work.* ... A finding of
> fact must be an inference drawn from evidence rather than
> ... a mere speculation as to probabilities without evidence."
> [Citations].

> *People* v. *Morris* (1988) 46
> Cal.3d 1, 21; emphasis added.

C.    The Legal Framework in Reference to Aggravated Mayhem.

The law was summarized in *People* v. *Lee* (1990) 220 Cal.App.3d

320 and *People* v. *Ferrell* (1990) 218 Cal.App.3d 828.  As explained in

*Ferrell,* no case could be discovered which had "considered the nature of

the evidence necessary to satisfy the intent requirement of section 205

...." *Id.,* at 834.  While noting that the intent to cause "permanent

disability or disfigurement" under section 205 was "not necessarily

identical" to the specific intent which must be proven to establish felony-

murder based on mayhem, *Ferrell* concluded that "the standards articulat-

ed in cases involving felony-murder mayhem are instructive here." *Id.,* at

835.  Division Three of the First District articulated those standards in

*Ferrell* (*ibid.*), and it reiterated those standards in *Lee:*

24

Those cases indicate that *evidence which shows no more than an "indiscriminate attack" on the body of the victim is insufficient* to prove the specific intent to commit mayhem under section 203. In addition, that specific intent cannot be inferred solely from evidence that the injury inflicted constitutes mayhem; instead, *there must be other facts and circumstances which give rise to an inference of intent to maim* rather than attack indiscriminately. (*People v. Ferrell, supra,* 218 Cal.App.3d at p. 835.)

> *People* v. *Lee, supra,* 220
> Cal.App.3d at 325; emphasis
> added.

Finally, there is *People* v. *Oates* (2004) 121 Cal.App.4th 1414, from Division Two of the Fourth District. *Oates* was a gang case in which the defendant had gone by car into a rival gang's territory following a gang fight. The car stopped, and two shots were fired at rival gang members with a .44-caliber handgun containing "modified" bullets. One shot struck -- and required the amputation of -- a rival gang member's leg. *Id.,* at 1418-1420. The *Oates* court acknowledged the analytical framework of *Lee* and *Ferrell,* concluding as follows:

> A reasonable inference could be made that defendant was aiming at Barrera, with the intent to permanently disable, *if not kill him,* and *this was not a random, indiscriminate attack.* While defendant may not have known Barrera's identity when shooting at him, due to poor lighting and distance factors, there was sufficient evidence he intended to shoot and maim or kill an NSO member, and targeted Barrera for that purpose.

> *Oates, supra,* 121 Cal.App.4th at
> 1421-1427.

25

From these cases, Mr. Grice derives five controlling principles:

(1)  If the evidence is sufficient to establish that the defendant intended to kill his victim, and if permanent disfigurement or disability resulted, the evidence is sufficient to establish a violation of section 205.  This was the view effectively adopted by *Oates*, and it is a logical one: killing someone is the ultimate act of "permanently disabling" the person;

(2)  Evidence that shows no more than an "indiscriminate attack on the victim is insufficient."  *See People v. Oates, supra*, 121 Cal.App.4th at 1421; *People v. Lee, supra*, 220 Cal.App.3d at 325; and *People v. Ferrell, supra*, 218 Cal.App.3d at 835;

(3)  There must be "facts and circumstances" -- beyond the fact of permanent disfigurement -- "which gave rise to an inference of [specific] intent to maim ..."  *People v. Lee, supra*, 220 Cal.App.3d at 325;

(4)  "A directed and controlled attack may provide substantial evidence of intent to disable or disfigure permanently.  [Citations.]"  *People v. Oates, supra*, 121 Cal.App.4th at 1421.  *See, also, People v. Lee, supra*, 220 Cal.App.3d at 326; and *People v. Ferrell, supra*, 218 Cal.App.3d at 836; and

(5) An appellate court is more likely to find a "direct and controlled attack" where the defendant had gone out seeking his victim.  *See People v. Oates, supra*; *People*

26

v. *Ferrell*, *supra*; and *People* v. *Campbell*, *supra*, 193
Cal.App.3d at 1668-1669.

D.    Application of Those Principles in This Case.

Mr. Grice asks this Court in its analysis to apply the principles
distilled from *Oates*, *Lee* and *Ferrell*. He submits in that regard that he
did not seek out Mr. Ward, as had the defendants in *Oates* and *Lee*. He
submits further that there was no sufficient evidence that Mr. Grice had
intended to kill Mr. Ward -- as the jury recognized in acquitting of
attempted murder and attempted voluntary manslaughter -- where intent
to kill was a persuasive factor in *Lee*.

Moreover, there was no evidence that Mr. Grice had a plan "to
maim" Mr. Ward. Mr. Grice's possession of gasoline -- however ill-
advised as a matter of public safety -- was as a solvent and not as a
weapon. The assault occurred in an instant, recalling Billy Budd's "blow
struck in anger."

Accordingly, this assault falls along the continuum -- from an
"indiscriminate" attack to a "direct and controlled" attack -- very near the
former and far from the latter. This Court, in its dispassionate view of
the trial evidence, should not be misled by the horrific result of the act.
Instead, the Court should limit its analysis to the evidence attending its
commission.

For all of these reasons, Mr. Grice urges that there was insufficient
evidence to support a conviction of "aggravated mayhem," because proof
of specific intent was deficient. This determination bars retrial under
federal twice-in-jeopardy principles. *See* United States Constitution,
Amendment Five; *Burks* v. *United States* (1978) 437 U.S. 1; *Greene* v.

27

*Massey* (1978) 437 U.S. 19; *In re Johnny G.* (1979) 25 Cal.3d 543, 546; and *People* v. *Pierce* (1979) 24 Cal.3d 199, 209-210.  Mr. Grice should be resentenced under section 203.

IV

THE TRIAL COURT'S SEVERAL RULINGS LIMITING
THE DEFENSE'S IMPEACHMENT OF MARIE CASTEEL
VIOLATED NOT ONLY CALIFORNIA LAW
BUT THE SIXTH AND FOURTEENTH AMENDMENTS.

A.      Overview of the Issue.

Marie Casteel caused the defense substantial harm, when she
reported at trial that Mr. Grice had come to her room on the night of the
fire, had admitted having thrown gasoline on Mr. Ward, and had said he
used a "match" to ignite the fire.  Ms. Casteel's testimony was a setback
for the defense, notwithstanding that her version of events was under-
mined to a degree by the absence of a spent match in the area of the fire,
and by Inspector Levin's testimony disputing Ms. Casteel's claim of
having reported Mr. Grice's purported admissions on the day after the
fire.

The defense sought to impeach Ms. Casteel further in two ways.
The first was the proposal to impeach her "credibility" through evidence
of her extensive involvement in crimes of "moral turpitude," which effort
the trial court sharply curtailed.  The second was the proposed introduc-
tion of Mr. Grice's custody status, to disprove Ms. Casteel's claim that
she had remained "silent" on this point for a year, out of fear of Mr.
Grice who was "out and about."

Mr. Grice submits now that the exclusion of this evidence was
error under state law, and under the federal constitution.

B.      Impeachment with Criminal Conduct Involving Moral Turpitude.

A host of issues were raised in the prosecutor's trial brief.  CT
125-140.  Among them was the extent of the permissible cross-examina-

29

tion of Ms. Casteel, whose criminal history included all of the following: (1) a 1983 misdemeanor arrest for vehicle theft, in violation of Vehicle Code section 10851; (2) a 1985 misdemeanor conviction for vehicle theft; (3) two 1985 misdemeanor trespassing convictions; (4) a 1987 misdemeanor conviction for battery, in violation of Penal Code section 242; (5) a 1987 misdemeanor conviction for theft of lost property, in violation of Penal Code section 485; (6) a 1988 arrest for possession of a controlled substance, in violation of Health and Safety Code section 11377; (7) a 1988 arrest for battery; (8) a 1988 misdemeanor conviction for vehicle theft; (9) a 1994 misdemeanor arrest for spousal abuse, in violation of Penal Code section 273.5; (10) a 1995 misdemeanor arrest for spousal abuse; (11) a 1996 misdemeanor conviction for spousal abuse; and (12) a 2002 arrest for "possession for sale," in violation of Health and Safety Code section 11352.  See, CT 130.

When the issue of impeachment was considered, the trial court held that the conduct underlying the arrest and convictions for vehicle theft [items (1), (2), and (8), above] was excluded as "not ... crimes of moral turpitude," "not relevant," and "more prejudicial than probative." RT [12/5/03] 8, 9.[7] The trial court excluded the conduct underlying the two trespassing convictions [item (3), above] as "more confusing and prejudicial than probative." *Ibid.* It excluded the conduct relating to her conviction and arrest for battery [items (4) and (7), above] as not being crimes of moral turpitude. RT [12/5/03] 9. It excluded the arrest for drug possession as not being a crime of moral turpitude. *Ibid.* It excluded the two arrests for spousal battery [items (9) and (10), above] as

---

[7] Clerk's Transcript of proceedings on December 5, 2003, consisting of 42 pages in one volume.

"more misleading and confusing to the jury than it is probative"]. RT [12/5/03] 12. Finally, it excluded the arrest for possession for sale of drugs [item (12), above] as "more prejudicial than probative." RT [12/5/03] 13.

The trial court did admit the underlying conduct as to the 1987 conviction for theft of lost property [item (5), above], and it ruled admissible the underlying conduct relating to the 1996 conviction for spousal abuse [item (11), above]. However, this did not cure the several errors in the rulings on the other evidence.

Mr. Grice will concede that the trial court was correct that simple battery and drug possession are not crimes involving moral turpitude; he will accept that trespass does not involve moral turpitude; and no error is alleged with respect to items (3), (4), (6), and (7), above. However, violation of Vehicle Code section 10851 involves moral turpitude,[8] as do both spousal battery[9] and possession for sale.[10]

For these reasons, Mr. Grice submits that error occurred in the exclusion of the conduct underlying the 1983 arrest, the 1985 conviction, and the 1988 conviction for vehicle theft (items (1), (2) and (8), above); the trial court's erroneous conclusion that this offense did not involve moral turpitude undermined entirely its Evidence Code section 350 and 352 findings, since each turns on the erroneous finding of no relevance.

---

[8]/ *People* v. *Zataray* (1985) 173 Cal.App.3d 390, 399; *People* v. *Hunt* (1985) 169 Cal.App.3d 668, 674; and *People* v. *Buss* (1980) 102 Cal.App.3d 781, 783. *See, also, People* v. *Lang* (1989) 49 Cal.3d 991, 1011.

[9]/ *People* v. *Rodriguez* (1992) 5 Cal.App.4th 1398, 1400-1401.

[10]/ *People* v. *Castro, supra*, 38 Cal.3d at 317.

31

Mr. Grice submits further that the trial court erred in the exclusion of the conduct underlying the 1994 and 1995 arrest for simple battery, as well as the 2002 arrest for "possession for sale." This jury should have known that Ms. Casteel's history included an ongoing array of crimes of moral turpitude, spanning two decades, in order that it might fairly evaluate her credibility, or the lack thereof.

C.    Impeachment with Respect to Mr. Grice's Custody Status.

Issues arose with regard to Marie Casteel, when she arrived at trial and testified that Mr. Grice had told her, when he came to her room on the night of the fire, that he had thrown something onto Mr. Ward and set him afire. This was the first defense counsel had heard of such a claim by Ms. Casteel, and the prosecutor asserted that he had only learned of this claim on the first day of trial. Thus was Ms. Casteel's credibility of substantial concern to the defense.

Defense had said in opening statement that no one would testify -- other than Mr. Ward -- that the fire had been other than accidental. RT 95-96. Upon being advised by the prosecutor that Ms. Casteel would testify to an admission by Mr. Grice to having set the fire, a defense mistrial motion was brought, which led Inspector Levin to testify *in limine* that he had learned of Ms. Casteel's claim while transporting her to court on the day she was to testify. RT 99. The mistrial motion was denied (RT 99-100), and Mr. Grice does not claim error in that regard.

When Ms. Casteel testified, she reported her claim of having heard Mr. Grice admit "he had set Ali on fire." RT 73.[11] Ms. Casteel ampli-

---

[11]/ The mistrial motion discussed in the preceding paragraph was made after Ms. Casteel had concluded her testimony.

fied by testifying that "Joe said he acted suspicious to him, so he said he threw something on him and threw a match on him and lit him on fire." *Ibid.* She testified further that she had not told anyone about this the first day she was questioned by police, but she did claim to have told Inspector Levin of the admission on the second day after the fire. RT 76-77.

Ms. Casteel was questioned further on direct examination, as follows:

> [BY THE PROSECUTOR]: Was there a time that you were a little bit afraid to tell anybody what Joe had told you about the fire?
>
> A. Yeah. Basically, yeah.
>
> Q. Can you explain?
>
> A. Well, because I didn't want to put myself in any danger then, because, you know, *he was still out and about.* So, you know, I didn't want to put myself in any -- you know, put words in the wrong ears."
>
> RT 77-78; emphasis added.

Ms. Casteel testified further on direct examination that she had never told anyone else what Mr. Grice had said on the night of the fire. RT 79.

The issue was explored further on cross-examination:

> [BY DEFENSE COUNSEL]: .... You're telling this jury that a year ago, you told Inspector Levin, the man sitting next to Miss Matthews, that Mr. Grice said to you that he threw something on Mr. -- on Ali, and lit him on fire with a match; is that correct?
>
> A. Yes.

33

Q. All right. And then you never repeated that to anybody for the next year; is that correct?

A. Right.

Q. All right. And the reason that you never repeated it was because you were afraid to tell anyone; is that right?

A. No. I had nobody to tell. Plus, I really didn't -- really didn't have -- didn't want to get in the way of any trouble anyway, you know.

Q. Okay. And was it your testimony on direct examination that one of the reasons why you didn't want to tell anybody was that Mr. Grice was out and about, and you didn't want to anger him; is that correct?

A. Right.

RT 81-82.

During subsequent examination of Inspector Levin, the inspector said he had been in contact with Ms. Casteel on numerous occasions since the fire, and he denied ever being told by Ms. Casteel -- prior to trial -- of an admission by Mr. Grice. RT 352-353. Still later, the following exchange occurred:

[BY DEFENSE COUNSEL]: .... [T]o your knowledge, sir, Mr. Grice has been in jail continuously, since September the 29th until this day; is that correct?

[THE PROSECUTOR]: Objection. Relevance and 352.

THE COURT: Can counsel please approach?

[DEFENSE COUNSEL]: Sure.

34

(BENCH CONFERENCE, NOT REPORTED.)

THE COURT:  All right.  I'm going to sustain that objection.  The question will be stricken from the record.

You're not to concern yourselves with that question.

RT 393.

After the jury was excused, defense counsel argued the issue upon which the court had just ruled.  RT 396-397.  The court was asked to review the transcript of Ms. Casteel's examination and to reconsider its ruling.  RT 398.  The trial court agreed to undertake that review.  RT 401.  The court later memorialized its basis for not changing its ruling.

THE COURT:  All right, then.  I reviewed the transcript of defense counsel's cross-examination of Miss Casteel.  Defense counsel is correct that Miss Casteel stated on cross-examination that she was -- that the reason that she never told anybody the statements made by Mr. Grice, about throwing something on Mr. Ward and lighting him on fire, is that she was afraid.

However, I did not find any testimony -- any questions to Miss Casteel or any testimony by Miss Casteel, indicating that she had any knowledge or thoughts about Mr. Grice's living situation, whether he was still at the hotel, at another residence, or in custody.

Therefore, it is reasonable to presume that she may have assumed that he was still out, not in custody, and that he might still present a threat to her.

So, absent any testimony from Miss Casteel regarding Mr. Grice's custodial status, I am not inclined to reconsider my ruling in sustaining the objection.

RT 547.

35

Mr. Grice submits again that error occurred. Under Evidence Code section 351, all relevant evidence is admissible, unless otherwise excludable. Evidence Code section 780, subdivision (i) lists "[t]he ... nonexistence of any fact testified to by [the witness]" as matter "the jury may consider in determining the credibility of a witness ...." *See, also,* Witkin, *California Evidence (4th ed),* "Contradictory Evidence on Relevant Matter," § 340, pp. 423-425, and cases there cited. It was error to have excluded this evidence.

D.    The Issue Under the United States Constitution.

The right to introduce exculpatory evidence is granted by the Sixth Amendment Compulsory Process Clause and the Fourteenth Amendment Due Process Clause. *See Crane* v. *Kentucky* (1986) 476 U.S. 683, 691-692; and *Washington* v. *Texas* (1967) 388 U.S. 14, 19. Stated another way, "a criminal defendant is constitutionally entitled to present all relevant evidence of significant probative value in his favor ...." *People* v. *Marshall* (1996) 13 Cal.4th 799, 836. *See, also, People* v. *Northrop* (1982) 132 Cal.App.3d 1027, 1042. "'Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and his right to present all relevant evidence of significant probative value to his defense.'" *People* v. *Taylor* (1980) 112 Cal.App.3d 348, 364, quoting *People* v. *Derden* (1978) 82 Cal.App.3d 543, 553; original emphasis omitted.

Moreover, the Sixth Amendment Confrontation Clause may be violated where a defendant "was prohibited from engaging in otherwise appropriate cross-examination designed ... 'to expose to the jury the facts from which the jury could appropriately draw inferences relating to the reliability of the witness.'" *Delaware* v. *Van Arsdall* (1986) 475 U.S.

36

673, 680, quoting *Davis* v. *Alaska* (1974) 415 U.S. 308, 318.  For all of these reasons, the trial court erred under the Sixth and Fourteenth Amendments in the exclusion of the conduct evidencing moral turpitude, and the impeaching evidence from Inspector Levin.

CONCLUSION

For the reasons stated, Mr. Grice respectfully urges that this Court should grant review. On review, the judgment of conviction should be reversed in its entirety.

Dated:  January 10, 2006          Respectfully submitted,


_____
KYLE GEE

Attorney for Appellant
JOSEPH GRICE

38

CERTIFICATE OF WORD COUNT

IN COMPLIANCE WITH RULE 33, SUBDIVISION (B)

I hereby certify, pursuant to Rule 33, subdivision (b), California Rules of Court, that the attached brief contains 8293 words.  In this certificate, I am relying on the word count produced by Wordperfect 5.1.

Dated:  January 10, 2006

_____
KYLE GEE

Attorney for Appellant
JOSEPH GRICE

PROOF OF SERVICE

I declare that:

I am employed in the County of Alameda, California.  I am over the age of eighteen years and not a party to the within cause; my business address is 2626 Harrison Street, Oakland, California 94612.

On January 13, 2006, I served the within APPELLANT'S PETITION FOR REVIEW on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Oakland, California, addressed as follows:

Attorney General
Department of Justice
455 Golden Gate Avenue
Suite 11000
San Francisco, CA  94102-3664

FDAP
730 Harrison St., #201
San Francisco, CA  94107

Joseph Grice
V-30099, D4-217
Salinas Valley State Prison
P.O. Box 1060
Soledad, CA 93960-1060

Hon. Suzanne Bolanos, Judge
c/o Superior Court Clerk
San Francisco County
Hall of Justice
850 Bryant Street
San Francisco, CA 94103

District Attorney
Hall of Justice
850 Bryant St., Rm. 322
San Francisco, CA 94103

Court of Appeal
First Appellate District
Division Five
Earl Warren Building
350 McAllister Street
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on January 13, 2006 at Oakland, California.

_Lauren Osher_

Lauren Osher