<2 id="L1">Case 3:07-cv-02490-PJH   Document 17   Filed 08/23/2007   Page 1 of 10</2>

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JOHN R. VANCE, JR., State Bar No. 51744
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5864
    Fax:  (415) 703-1234
8   Email:  John.Vance@doj.ca.gov
   Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSEPH GRICE,** | C 07-2490 PJH (PR) |
| Petitioner, | **RESPONDENT'S POINTS AND AUTHORITIES OPPOSING PETITIONER'S REQUEST FOR DISCOVERY** |
| v. | |
| **JOHN MARSHALL, Warden,** | |
| Respondent. | |

**I.**

**INTRODUCTION**

Petitioner is currently serving a life sentence for aggravated mayhem (Cal.Pen. Code, 205). Resp. Exh. A. He has filed a petition for writ of habeas corpus and a motion for discovery. This Court has ordered respondent to respond to each. This pleading addresses the discovery request. It should be denied because it relates to an unexhausted claim. (In lieu of filing an answer to the order to show cause, respondent will file a motion to dismiss for failure to exhaust at the same time as this pleading.)

///

## II.

## BACKGROUND

The state court of appeal explained:

On September 28, 2002, San Francisco police were called to the Stanford Hotel at 250 Kearny Street where there was a report of a man on fire. An officer found Ali Ward in a hallway on the third floor of the hotel near room 328. Ward was conscious but had suffered serious burns. In a common shower room around the corner from room 328, the officer saw a tub containing water and burnt material. The officer found no one in room 328, and the room had been damaged by fire. Ward told the officer that someone had poured gasoline on him and set him on fire. The officer summoned an ambulance, and the responding paramedic found Ward lying on his back, burned from head to toe, screaming, and conscious. The paramedic was unable to discern Ward's race because of the burned condition of his body.

Ward was taken to the hospital, where he kept repeating, "He poured gasoline on me and set me on fire." FN1 According to the treating physician, Ward was having trouble breathing and would have died within 15 to 20 minutes had the doctor not inserted a breathing tube. Ward had suffered burns to his face, the inside of his mouth, his upper airway, chest, and abdomen. Ward had both partial-thickness and full-thickness burns, also known as second and third degree burns over 50 percent of his body.

FN1. A hospital emergency room nurse could not recall whether Ward said "they" had set him on fire or whether "he" did so.

Hasmukhala Ghandi, the manager of the Stanford Hotel, knew Grice, who lived in room 328. On September 28, 2002, Ghandi stated that Grice had come to the front desk and said that he had noted smoke and the smell of gasoline in his room. Grice did not tell Ghandi to call an ambulance and did not say that anyone was hurt. Ghandi went to the third floor, told the hotel owner to call 911, and then sprayed room 328 with a fire extinguisher. Ghandi heard a shout for help, went to the common shower room and said, "Come out, please." Ward emerged from the shower room and laid down in the hall.

Mary Carder, an arson investigator for the San Francisco Fire Department, responded to the fire at 250 Kearney Street. Carder was qualified as an expert witness in fire investigation and in the determination of the origin of fires. She explained that she observed a burn pattern on the hallway carpet in front of room 328, another burn pattern on the floor outside the door, soot inside the door, and extinguisher residue in the hallway leading to the common shower area. Carder smelled gasoline inside room 328. She found a cigarette lighter covered in fire extinguisher residue near the bed, but she did not check to see if the lighter worked. Carder found no spent matches around the front door area, the burn area inside, or outside of the room. She found a candle inside a candle holder and an incense stick on a table in an area where the carpet had not been burned, but saw no evidence of burning, sooting, or heat discoloration.

Carder eliminated "all accidental sources of ignition" and concluded that the fire had been intentionally set. She testified that the candle was too far away to have ignited the gasoline. She testified that the burn patterns inside and outside the door were consistent with burning an ignitable liquid. The fire began in room 328, where it had burned the longest, and then spread to the hallway. The flammable liquid had been tossed, splashed, or poured from inside the room toward the outside.

Marie Casteel, a resident of the hotel, was a friend of Grice's and knew Ward to be a friend of Grice's. She was aware of no dispute between Grice and Ward. On the day of Grice's attack on Ward, Grice had come to Casteel's room. When Casteel asked Grice why he was there, he replied, "Because the police are upstairs." Then Grice told Casteel that ""he [ (Grice) ] had set [Ward] on fire."" Grice told Casteel that there had been a knock on his door and that he had answered the door and found Ward, who "acted suspicious." Grice told Casteel that "he threw something on [Ward] and threw a match on [Ward] and lit [Ward] on fire." Grice remained in Casteel's room until 5:00 a.m.

Casteel testified that on the day of the fire she had not told police about Grice's statement that he had set Ward on fire, but stated that she had told San Francisco Police Inspector Jeffrey Levin, from the police department's arson task force, the next day.FN2 She testified that she had been afraid to tell anyone what Grice had told her because he was ""out and about.""

> FN2. Levin testified that, on the night of the fire, he had gone to Casteel's room to ask if she knew of Grice's whereabouts. Casteel told him that she did not. Levin stated that the first time he had heard Casteel's statement about Grice's admission had been on the day she testified at trial, while he was driving her to court.

Ward, still hospitalized at the time of trial, testified by videotaped examination. Ward stated that he and Grice had been friends for several years. He visited Grice weekly, and Grice had never told him not to visit. Ward was addicted to crystal methamphetamine and had sold methamphetamine to both Grice and Casteel to support his habit. Grice owed Ward approximately $20.

On the day of the attack, Ward went to Grice's room to borrow a bicycle tire. He did not go to collect the money Grice owed him, because he knew Grice had no money. Ward knocked on Grice's door but no one answered. He returned some 30 minutes later, knocked again, and this time Grice opened the door. Ward did not have a gun with him. He testified that he had no reason to fear Grice when he knocked. Ward stated, "I seen [Grice] and then I ... felt liquid splash me in the face, and I closed my eyes. And I opened my eyes and I seen a flame, and then I was on fire." Grice said nothing before he threw the gasoline. Ward saw a flame "[c]oming at [him], like being pointed at [him] around to [his] middle section." Ward "did not know if it was a candle or a lighter or what. It was all very quick. Before [he] knew it, [he] was on fire."

Ward stated that he and Grice had had no argument that day. Ward testified that he did not push or force the door open, and did not step inside the room. Ward went to the bathroom, turned on the water, and then remembered nothing after that until the middle of November, when he awoke in the hospital. As a result of the fire, Ward's nose had to be reconstructed; he lost his ears; and he has major scars. He is unable to lift his hands to his face.

On September 29, 2002, the day after the fire, the hotel manager notified the police that Grice had returned. The police arrested Grice in the alley next to the hotel that afternoon. Levin interviewed Grice, who said that Ward came to his room frequently and that he began to dislike it and told Ward to stay away.

According to Grice, Ward had been hanging around the hotel, but had not approached Grice for "quite a while." About a week prior to the attack, Ward had brought Grice "a little ... crystal" to get him "started," although Grice had been "trying to stay drug-free mostly." Grice stated that after that visit, Ward had come to his room to "demand[ ] things." When asked if Ward had threatened him, Grice stated, "[T]o an extent

Respondent's Points & Authorities Opposing Petitioner, etc.,          *Joseph Grice v. John Marshall, Warden*
                                                                      C 07-2490 PJH (PR)

3

yes, but mostly what they had to threaten with is the lady." Grice said that Ward "irritate[d]" and "belittle [d]" him.

Grice stated that Ward had been "messing with [him]." Ward had come to Grice's room the night before the fire, but Grice had not answered the door. On the day of the fire, Ward ""kept knocking on the door."" Grice said that he felt "threatened" and "hurt in a way behind what had happened."

When Ward knocked on his door the last time, Grice told Ward, "I don't have any money." When Ward knocked again, Grice unlocked the door and Ward "pushed in." When Ward was "almost in" Ward said, "Do you have my money?" Grice kept gasoline in a gas can in his room, and had put some gasoline in a small plastic container for cleaning purposes. While Ward was standing in the doorway to his room, Grice "just grabbed this thing," and threw "the thing" on Ward. Grice explained that "I was trying to ... get him to leave me alone." Grice had a religious candle burning nearby on a table. When Ward moved forward, the candle "caught it."

Grice told the police that "[Ward] came closer to [him].... That's when it went woosh." Grice stated, "I threw it right pass there and when it hit him, part of it fell down on the floor and went poof." "[I]t started from the floor and came up woof." "I remember the fire ran up the wall and went poof." Grice denied that he had thrown a lighter at Ward.

In a second recorded interview with Levin, Grice stated that his keys had been missing after Ward had visited on one occasion. Grice believed that in "some way" Ward had been "able to listen to [Grice's] room." Grice stated that he did not like Ward, but he did not hate him either.

Grice stated that Ward had opened the door. He claimed that Ward "can't be trusted [and] carries a gun[,] so I'm not going to get hurt[.] ... [B]ut I told him I didn't have money ... and I threw it on him to stop him." Grice said that there was a small candle nearby, and "when I threw [the gasoline], I light it [.] I might have dropped the cigarette[.]" He stated that ""the fire came up from the floor, it caught my hand, then went woosh right over him ." Grice "didn't think the gas would go off." He stated that "I meant to throw it in his face and burn him to keep away from me." Grice continued, "[Ward] pushed [the door] in. And what else can I do? ... He is a tall, large person. I did not want to be shot. I didn't know it was going to light up."

Resp. Exh. A.

## III.

## GENERAL PRINCIPALS RELATED TO DISCOVERY

There is "no federal right, constitutional or otherwise, to discovery in habeas proceedings as a general matter." *Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993); see *Harris v. Nelson*, 394 U.S. 286, 296 (1969) (noting that provisions for discovery contained in the Federal Rules of Civil Procedure "are ill-suited to the special problems and character of such [habeas corpus] proceedings"). Federal habeas discovery is available "if, and to the extent that, the judge in the

1 exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Rules
2 Governing Section 2254 Cases, rule 6; *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999).

3 Good cause exists where "specific allegations before the court show reason to believe that
4 the petitioner may, if the facts are fully developed, be able to demonstrate that he is. . . entitled to
5 relief." *Bracy v. Gramley*, 520 U.S. 899, 909-910 (1997) (citing *Harris v. Nelson*, 394 U.S. at 300);
6 see *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) ("Good cause for discovery was
7 established in *Bracy* based primarily upon the specific nature of the allegations and the concrete
8 nature of the evidence proffered to support *Bracy*'s theory."). In order to determine whether
9 discovery is proper, the court "must first identify the 'essential elements'" of the claims on which
10 discovery is requested. *Bracy*, 520 U.S. at 904. Good cause "clearly cannot exist where the facts
11 alleged do not provide a basis for relief." *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir.
12 1990); *Rich v. Calderon* at 1068; *see Williams v. Bagley*, 380 F.3d 932, 976-977 (6th Cir. 2004)
13 (discovery on claim that prosecution failed to disclose impeachment evidence was properly denied
14 where any evidence of inducements for witness's testimony would have been cumulative in light
15 of impeachment that was introduced at trial); *United States v. Roane*, 378 F.3d 382, 403 (4th Cir.
16 2004) (discovery was properly denied on procedurally defaulted claims); *Sherman v. McDaniel*, 333
17 F.Supp.2d 960, 967 (D. Nev. 2004) ("The Court understands the *Bracy* requirement that proposed
18 discovery be based upon 'specific allegations before the court' to mean something other than merely
19 the recitation of a generic claim, such as 'counsel conducted inadequate discovery and
20 investigation.'")

21 The "court should not allow prisoners to use federal discovery for fishing expeditions to
22 investigate mere speculation." *Calderon v. District Court* (*Nicolaus*), 98 F.3d 1102, 1106 (9th Cir.
23 1996). "Conclusory allegations are not enough to warrant discovery under Rule 6 . . . ; the petitioner
24 must set forth specific allegations of fact." *Id*. (citation omitted); see *Murphy v. Johnson*, 205 F.3d
25 at 814 (denying discovery on *Brady* claim where petitioner's "conclusory allegation that the
26 prosecutor failed to disclose a secret deal with [jailhouse informant] McGregor is based purely on
27 speculation"); *United States v. Roane*, 378 F.3d at 404 (denying discovery on juror misconduct claim
28 where petitioners "failed to proffer any evidence that the jurors engaged in misconduct or that they

Respondent's Points & Authorities Opposing Petitioner, etc.,   *Joseph Grice v. John Marshall, Warden*
C 07-2490 PJH (PR)

5

were improperly exposed to outside influences"); *Wallace v. Ward*, 191 F.3d 1235, 1244-1245 (10th Cir. 1999) (denying discovery on conflict of interest claim where petitioner's allegation that he "believe[d]" defense counsel "may" have entered into a book or movie contract during his representation of petitioner was conclusory and speculative).

"[A]ny right to federal discovery presupposes the presentation of an unexhausted [sic: exhausted] federal claim, because a federal habeas petitioner is required to exhaust available state remedies as to each of the grounds raised in the petition." *Calderon v. District Court* (*Nicolaus*), 98 F.3d 1102, 1106 (9th Cir. 1996); *Calderon v. District Court* (*Roberts*), 113 F.3d 149 (9th Cir. 1997) (discovery is inappropriate where the federal habeas petition contains unexhausted claims); *see Sherman v. McDaniel*, 333 F.Supp.2d 960, 968, n. 4 (D. Nev. 2004).

### IV.

### THIS COURT SHOULD DENY THE DISCOVERY REQUEST BECAUSE IT IS RELATED TO AN UNEXHAUSTED CLAIM

Petitioner requests discovery of "(1) all restraining orders, stay away orders that were imposed by the San Francisco Superior Court against Mr. Ward; all prior arrest records summaries that shown any arrest and charges up to the filing of this motion of Mr. Ward or as the court sees fit; [and] (3) petitioner is layman of the law and so, request that the San Francisco Court Clerk and the California Attorney General's office provide such and all copies of requested documents." Memorandum . . . In Support Of The Attached Motion For Discovery, 5.

Petitioner asserts that "prior to trial and during those proceedings defense counsel failed without reason to collect evidence favorable to the defense. Had it not been for defense counsel's error at trial there would have been no doubt that the evidence of the victim's prior violent acts would have supported the defendant's claim of self-defense. See RT at 418." Memorandum, 2.

Petitioner's reference to RT 418 is to a statement his defense counsel made during discussion of jury instructions. He stated, regarding an instruction about admissions, "Mr. Grice objects. He didn't make any admissions. His statements were that he acted in self-defense. There's

no admission. So we object." Resp. Exh. B, RT 418.

Petitioner claims in his discovery motion, "The evidence requested [by this motion] could not have been discovered at trial, as the result of ineffective assistance of counsel." Memorandum, 5. Thus, petitioner's claim is for discovery related to his contention in claim three that "Trial counsel's failure to collect evidence in support of the self-defense argument caused a domino affect [sic] of violations. Further, it did not allow facts to be fully developed which denied petitioner a fair trial." Federal Petition, 6.

But, as explained in our motion to dismiss, the claim is not exhausted. Consequently, this Court should not grant discovery. *Nicolaus*, 98 F.3d at p. 1106; *Roberts*, 113 F.3d at 149.

### V.

### PETITIONER HAS NOT SHOWN AN ADEQUATE BASIS FOR DISCOVERY

While petitioner is not entitled to discovery on an unexhausted claim, respondent, nevertheless, points out that the requests should not be granted in any event.

As to petitioner's request for "all restraining orders, [and] stay away orders that were imposed by the San Francisco Superior Court against [the victim]," the request is speculative because petitioner has failed to show that such restraining orders exist. While petitioner claims "the San Francisco Superior Court having [sic] placed restraint orders on Mr. Ward to stay away from the hotel prior to the alleged crime" Memorandum, 5, petitioner states no basis, such as personal knowledge, which would allow this Court to conclude that such might exist. In addition, the request is defective because (1) the request has no temporal limits – for example, it includes orders imposed years before the events in question and goes up to the present; (2) the request would include restraining orders no matter who sought them; (3) the request is not limited to restraining orders necessarily related to violence; and (4) petitioner does *not* state that at the time he ignited the victim with gasoline that he, in fact, knew of such orders, and, that his knowledge of those orders caused him to be in fear of the victim. At most, petitioner alleges in conclusory fashion that the superior

Respondent's Points & Authorities Opposing Petitioner, etc.,     *Joseph Grice v. John Marshall, Warden*
C 07-2490 PJH (PR)

1  court the superior court had issue such orders. Memorandum, 5. Consequently, the existence of
2  restraining orders would not have been admissible at trial. See *People v. Pena*, 151 Cal.App.3d 462,
3  476 (19840 (jury may consider victim's prior threats in determining reasonableness of belief in
4  necessity for self-defense, where defendant had actual knowledge of those threats).

5  As to petitioner's request for "all prior arrest record summaries that any arrest and charges
6  up to the filing of this motion of [the victim] or as the court sees fit," petitioner includes no
7  statement from trial counsel about his state of knowledge if any related to any such records and, in
8  particular, that he did not have them. *See People v. Little*, 59 Cal.App.4th 426 (1997) (prosecutor
9  required to run a rap sheet on all critical witnesses under California Penal Code section 1054.1
10 because the information was "reasonably accessible.") In addition, we note that while petitioner
11 claims, "It is a fact that the police have filed reports of violence against Mr. Ward," Memorandum,
12 5, the phrase "all prior arrest record summaries" is ambiguous in that it does not specifically refer
13 to arrest records which law enforcement is required to keep. See, in gen., *People v. Dunlap,* 18
14 Cal.App.4th 1468, 1479-1480 (1993) (State Department of Justice records of criminal offender
15 information, as later memorialized in a CLETS printout); *People v. Martinez*, 22 Cal.4th 106,
16 125-134 (2000) (discussing statutory bases for the compilation of CLETS records). Moreover,
17 petitioner does not limit it to entries which would be admissible on a claim of self-defense of which
18 he was aware.

**CONCLUSION**

For the foregoing reasons, respondent respectfully requests this Court deny petitioner's request for discovery.

Dated: August 21, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

PEGGY S. RUFFRA
Supervising Deputy Attorney General


/s/  John R. Vance, Jr.
_____

JOHN R. VANCE, JR.
Deputy Attorney General
Attorneys for Respondent

20101582.wpd;  SF2007401543
JRV:je

Respondent's Points & Authorities Opposing Petitioner, etc.,   *Joseph Grice v. John Marshall, Warden*
C 07-2490 PJH (PR)

9

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *Joseph Grice v. John Marshall, Warden*       No.:  **C 07-2490 PJH (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>August 23, 2007</u>, I served the attached:

**RESPONDENT'S POINTS AND AUTHORITIES OPPOSING
PETITIONER'S REQUEST FOR DISCOVERY**; and
**RESPONDENT'S MOTION TO DISMISS PETITION AS UNEXHAUSTED**

by placing a true copies thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004, addressed as follows:

Joseph Grice
V-30099
P.O. Box 8101
San Luis Obispo, CA 93409-8101

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 23, 2007, at San Francisco, California.


|  J. Espinosa   |   /s/ J. Espinosa   |
|:---:|:---:|
| Declarant | Signature |

20101591.wpd